W. Martin HASKELL, Plaintiff,

v.

WASHINGTON TOWNSHIP, et al., Defendants.

No. C–3–83–240.

United States District Court, S.D. Ohio, W.D.

Jan. 26, 1984.

John A. Cumming, Dayton, Ohio, Roy Lucas, Fairfax, Va., for plaintiff.

John R. Koverman, Dayton, Ohio, for defendants.

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION TO DIS-MISS DIRECTED TO THAT POR-TION OF PLAINTIFF'S COMPLAINT ALLEGING UNCONSTITUTIONALI-TY OF AMENDMENT TO ZONING RESOLUTION; FURTHER PROCE-DURES REQUIRED OF DEFEND-ANTS; PLAINTIFF'S FIRST MO-TION FOR PARTIAL SUMMARY JUDGMENT OVERRULED

RICE, District Judge.

This is a challenge to the allegedly dis-criminatory application of certain zoning regulations of Defendant Washington Township ("Washington Township") and to an amendment of the township's zoning resolution. The Plaintiff is a licensed phy-sician who alleges that the discriminatory application of the Washington Township zoning regulations prevented him from opening a planned medical facility, which, in part, would have offered abortion servic-es. Plaintiff also alleges that the adoption of Resolution # 81–248, by the Washington Township Board of Trustees ("Trustees"), which limits any facility providing abor-tions to B–3 districts, unconstitutionally prohibits such facilities from the Township. The Defendants are Washington Township, two of the members of its Board of Trus-tees, Walter A. Buchanan and Russell W. Miller, and its zoning inspector, Ron Smith. This cause is now before the Court on Defendants' motion to dismiss for lack of standing (doc. # 8).[1]

Briefly stated, Plaintiff's Complaint al-leges that in 1981 Plaintiff sought to open a women's health center in the Paragon Office Building, which is located in Wash-ington Township. Plaintiff planned to pro-vide a wide range of medical services in-cluding abortions at this facility. In Au-gust, 1981, Plaintiff began making inquir-ies about purchasing the Paragon Office Building. In September of that year, Plain-tiff made an offer to purchase the building. In October, 1981, Plaintiff signed and deliv-ered to the leasing agent a five-year lease for approximately 3,000 square feet on the first floor of that building. The lease would have begun upon completion of reno-vations. Plaintiff obtained architectural drawings for the anticipated renovations of the building.

On October 6, 1981, a group of citizens, opposed to the providing of abortion servic-es at Plaintiff's planned location, attended the meeting of the Washington Township

---

1. Also pending are two motions for partial sum-mary judgment by the Plaintiff. The Plaintiff seeks summary judgment (doc. # 7) on the amendment to the zoning resolution and re-quests that the Court both declare it unconstitu-tional and permanently enjoin its enforcement. Plaintiff's other motion for partial summary judgment (doc. # 15) seeks to have the Court declare that certain actions of the Board of Trustees violated procedural due process.

Trustees and expressed their opposition. At that meeting, the Trustees voted to refer the case to the Montgomery County Prosecutor ("Prosecutor") for an interpretation of the then-existing zoning regulation.

On October 7, 1981, the Trustees requested the Washington Township zoning inspector to measure the Paragon Office Building and its parking lot to determine whether it had an adequate number of parking spaces. The zoning inspector measured the building and parking lot and reported to the Trustees that the building complied with the requirements of the township zoning resolution for off-street parking. The building had been given a certificate of occupation upon its completion in 1978. The issuance of that certificate was premised on compliance with all zoning regulations, including all parking requirements. Nevertheless at an executive session held on October 18, 1981, the Trustees, after determining that the building was without sufficient parking, in violation of the zoning regulation, passed a resolution to hire an attorney to initiate legal proceedings against the owners of the Paragon Office Building. The Trustees based this determination on a novel interpretation of the zoning resolution's requirements for offstreet parking. The Trustees used this interpretation to discourage Plaintiff from providing abortion services at that location.

After learning about the novel interpretation of the parking requirement, Plaintiff gave in to pressure and abandoned his plan to open a medical facility in the Paragon Office Building. He did not buy the building, and its owners declined to lease him space. After the Plaintiff abandoned his plan, the Trustees took no actions, regarding the insufficiency of parking, against the owners of the building.

Immediately afterwards, the Trustees, not content merely to thwart Plaintiff's plans, passed Resolution # 81–248 which amended the Washington Township zoning resolution. The amendment limited the location of any facilities which offer abortion services to B–3 zones. This effectively banned abortions in Washington Township as there are only about 3.3 acres zoned B–3 in the township. None of the land, zoned B–3, is available for lease. The resolution also regulates facilities that offer abortion services as controlled uses in B–3 zones. As a controlled use, the Board of Zoning Appeals must approve the location of a facility offering abortions.

Plaintiff's Complaint challenges both the discriminatory application of the parking requirements and the amendment to the zoning resolution limiting facilities that offer abortion services to B–3 zones. Defendants' motion to dismiss for want of standing addresses only Plaintiff's challenge to the constitutionality of the amendment.

■ As a preliminary matter, when a court is ruling on a motion to dismiss for want of standing, the court must accept as true all allegations in the complaint, and must construe the complaint in favor of the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Jenkins v. McKeithen*, 395 U.S. 411, 420, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). This Court has done precisely that in ruling on Defendants' motion to dismiss. Indeed, the previous recitation of the circumstances surrounding the initiation of this action is taken entirely from Plaintiff's Complaint and accepted as true. Although Defendants' motion contains a statement of the facts of this case, including exhibits, and an attack on the veracity of certain paragraphs in Plaintiff's Complaint, the Court has not considered these in ruling on the present motion.

■ The requirement that a party have standing before a court can entertain a suit derives from the Article III limitation on the exercise of judicial power to "cases or controversies." As the Court said in *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976):

> No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limi-

tation of federal-court jurisdiction to actual cases or controversies. See *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). The concept of standing is part of this limitation. Unlike other associated doctrines, for example, that which restrains federal courts from deciding political questions, standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Id.*, at 99, 88 S.Ct., at 1952, 20 L.Ed.2d at 961.

*Id.* at 37–38, 96 S.Ct. at 1923–1924.

■ Resolution of the inquiry into whether a party has standing depends on the answers to two distinct questions.

First, whether the plaintiff-respondents allege "injury in fact," that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Art. III jurisdiction, and, second, whether, as a prudential matter, the plaintiff-respondents are proper proponents of the particular legal rights on which they base their suit.

*Id.* at 112. Defendants argue that Plaintiff has not alleged an injury in fact and that he is not the proper proponent of the legal right (a woman's right of privacy) upon which this suit is based. Because this Court agrees with Defendants that the Plaintiff has not alleged an injury in fact, it is not necessary to consider whether Plaintiff is the proper person to assert those rights.

■ In order to show that he has suffered an injury in fact, "[T]he Plaintiff must show that he himself is injured by the challenged action of the defendant." *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 260, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977). There also must be a fairly traceable causal connection between the claimed injury and the challenged conduct. *Duke Power Co. v. Carolina Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978). In other words, it must be shown that the exercise of a court's remedial pow-

ers would redress the claimed injuries. *Id.* at 74, 98 S.Ct. at 2631; *Simon v. Eastern Ky. Welfare Rights Org., supra*, 426 U.S. at 43, 96 S.Ct. at 1926.

■ In the present case, the Court will accept that Plaintiff has sufficiently alleged that he suffered a "distinct and palpable injury." *Warth v. Seldin, supra*, 422 U.S. at 501, 95 S.Ct. at 2206. He alleges that he is unable to provide abortion services in Washington Township. However, his Complaint is otherwise fatally deficient. Particularly, the Complaint is devoid of any allegation from which this Court could infer that there is a fairly traceable causal connection between the claimed injury, the inability to offer abortion services in Washington Township, and the challenged conduct, the amendment to the Washington Township zoning resolution by the adoption of Resolution # 81–248.

In his Complaint, Plaintiff alleges that he had abandoned attempts to purchase or lease the Paragon Office Building *prior* to the adoption of the challenged Resolution. Plaintiff does not allege that he presently owns, leases or is attempting to purchase or lease any property that will be subjected to the restrictive amendment. Indeed, the Plaintiff does not even allege that he is presently interested in operating a medical facility, offering abortion services, in Washington Township. Under these circumstances, the Court cannot conclude that the adoption of Resolution # 81–248 caused any injury to the Plaintiff or that the exercise of this Court's remedial powers would redress the claimed injury. See *Jacobson v. Tahoe Regional Planning Agency*, 566 F.2d 1353, 1366 (9th Cir.1977), *rev'd on other grounds*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979).

The authorities relied upon by Plaintiff do not change this conclusion, as each is distinguishable from the situation presented in the instant case. In *Arlington Heights v. Metropolitan Housing Dev. Corp., supra*, the developer had a contract, contingent upon securing rezoning, to purchase the land in question. 429 U.S. at

262, 97 S.Ct. at 561–562. Plaintiff has no such contract contingent upon a satisfactory resolution of the zoning controversy. Similarly in *Huntington Branch, NAACP v. Town of Huntington,* 689 F.2d 391 (2d Cir.1982), one of the plaintiffs had an option to buy the tract which was sought to be developed. The court held that proof of a source of financing was not necessary to standing. Herein, this Court does not consider whether the Plaintiff has financial ability to go forward; rather, the focus of its inquiry is on the lack of any tangible indication that Plaintiff *would* so proceed should the Court enjoin the enforcement of Resolution # 81–248. A consideration of *West Side Women's Services, Inc. v. City of Cleveland,* 573 F.Supp. 504 (N.D.Ohio 1983) does not compel a different result. In *West Side Women's Services,* the zoning ordinance in question had actually prevented the plaintiffs from opening their clinic. Under those circumstances, the court concluded that the plaintiffs had standing to seek declaratory and monetary relief.[2] Herein, Resolution # 81–248 did *not* prevent the Plaintiff from operating his medical facility, since he abandoned plans to do so prior to the adoption of that resolution.

Based on the foregoing, the Court concludes that the Plaintiff does not have standing to challenge the constitutionality of Resolution # 81–248. In reaching this conclusion, the Court, of course, expresses no opinion of the resolution's validity. Consequently, the Defendants' motion to dismiss is sustained. However, this decision relates to only that portion of the Plaintiff's Complaint which alleges that the adoption of Resolution # 81–248 was unconstitutional. This decision does not address the Plaintiff's allegations that he was the victim of the discriminatory application of parking regulations.

Also still pending are Plaintiff's two motions for partial summary judgment (docs. # 7 and 15). The first of these (doc. # 7) seeks partial summary judgment on the constitutionality of Resolution # 81–248. Since the Court has determined that the Plaintiff does not have standing to challenge that resolution, it follows that, as a matter of law, Plaintiff is not entitled to the requested judgment. Therefore, Plaintiff's first motion for a partial summary judgment is overruled. The second motion for a partial summary judgment (doc. # 15) is not related to Resolution # 81–248. Accordingly, Defendants are ordered to file any memorandum, in opposition to this motion that they may wish to file, within 20 days of the receipt of this Decision and Entry.

---

**2.** In *West Side Women's Services,* the court held that a physician may challenge a zoning ordinance which restricts the location of facilities offering abortions by asserting a woman's right to privacy. Plaintiff, relying on *West Side Women's Services,* makes a similar argument herein. In light of the Court's holding, herein, that the Plaintiff does not have the requisite standing to challenge Resolution # 81–248, this Court does not decide whether Plaintiff may challenge Resolution # 81–248 on the basis that it violates a woman's right to privacy by restricting the availability of facilities that offer abortions.