**W. Martin HASKELL, Plaintiff,**

v.

**WASHINGTON TOWNSHIP, Defendants.**

No. C–3–83–240.

United States District Court, S.D. Ohio, W.D.

April 17, 1986.

John A. Cumming, Dayton, Ohio, Roy Lucas, Cincinnati, Ohio, for plaintiff.

John R. Koverman, Jr., Patrick K. Smith, Dayton, Ohio, for defendants.

OPINION GRANTING PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT (DOC. # 41 and # 69); ENTRY GRANTING DEFENDANTS LEAVE TO AMEND THEIR ANSWER AND SETTING FORTH PROCEDURES FOR BRIEFING THE STATUTE OF LIMITATIONS ISSUE

RICE, District Judge.

This case is before the Court on Plaintiff's Motion for Partial Summary Judg- ment (Doc. # 41), which argues that the zoning resolution enacted by the Defendant Washington Township in 1982 was unconstitutional and therefore illegally deprived Plaintiff of the opportunity to open an abortion clinic in Washington Township. Plaintiff's Supplemental Motion for Partial Summary Judgment and Reply Memorandum in Response to Defendants' Supplemental Memorandum in Opposition to Motion for Partial Summary Judgment (Doc. # 69) argues that the zoning resolution passed on January 16, 1986, which replaced the 1982 resolution, is also unconstitutional and is illegally preventing Plaintiff from opening an abortion clinic. Defendants argue that Plaintiff lacks standing to sue on these claims, that Plaintiff's claims based on the 1982 resolution are moot in light of the 1986 resolution, and that both resolutions are constitutional. For the reasons set forth below, the Court finds that Plaintiff has standing to sue, that passage of the 1986 resolution does not make Plaintiff's claim under the 1982 resolution moot, and that both the 1982 and 1986 resolutions are unconstitutional.[1]

I. *Standing*

By a decision dated January 26, 1984 (reported at 588 F.Supp. 528), the Court found that Plaintiff's original complaint failed to state grounds that would support his standing to sue under the 1982 resolution. Subsequent to this decision, Plaintiff amended his complaint in an effort to support his standing to sue. He has also purchased two lots that are potentially suitable for the establishment of an abortion clinic. In opposing Plaintiff's Motions for Partial Summary Judgment, Defendants argue that neither the purchase of these lots nor the other amendments to the complaint are sufficient to give Plaintiff standing to sue.

The Court has previously pointed out that:

Resolution of the inquiry into whether a party has standing depends on the an-

1. For a discussion of the facts underlying this case, *see* 588 F.Supp. 528.

swers to two distinct questions. "First, whether the plaintiff-respondents allege 'injury in fact' that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Art. III jurisdiction, and, second, whether as a prudential matter, the plaintiff-respondents are proper proponents of the particular legal rights on which they base their suit." 588 F.Supp. at 531 (quoting *Singleton v. Wulff,* 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976)); *see also Warth v. Seldin,* 422 U.S. 490, 498–501, 95 S.Ct. 2197, 2204–06, 45 L.Ed.2d 343 (1975); *Allstate Ins. Co. v. Wayne County,* 760 F.2d 689, 692–93 (6th Cir.1985). The Court can grant this motion for partial summary judgment only if it determines that the record in this case now shows that no genuine issues material to Plaintiff's standing to sue exist and accordingly finds that Plaintiff has standing as a matter of law.

### A. *Injury in Fact*

■ The requirement of injury in fact has three elements:

"[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 [99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66] (1979), and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision,' *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1924, 1925–26, 48 L.Ed.2d 450] (1976)....

*Bender v. Williamsport Area School Dist.,* — U.S. —, —, 106 S.Ct. 1326, 1332, 89 L.Ed.2d 501 (1986) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982)).

■ To show actual or threatened injury, "the Plaintiff must show that he himself is [or would be] injured by the challenged actions of the defendant." *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 260, 97 S.Ct. 555, 560–61, 50 L.Ed.2d 450 (1977); *see also Heights Community Congress v. Hilltop Realty, Inc.,* 774 F.2d 135, 139 (6th Cir. 1985) ("there is no doubt that plaintiffs were in a *position* to be injured by defendant's alleged ... violations, and thus they have alleged and proven facts sufficient to establish actual *or threatened* injury." (emphasis in original)). The Court has previously noted that "Plaintiff has sufficiently alleged that he suffered a "distinct and palpable injury." *Warth v. Seldin,* ... 422 U.S. at 501, 95 S.Ct. at 2206. He alleges that he is unable to provide abortion services in Washington Township." 588 F.Supp. at 531. It remains uncontroverted that at present Plaintiff is still unable to provide abortion services in Washington Township. Therefore, the Court must conclude that Plaintiff has suffered, and continues to suffer, an actual or threatened injury.

Having found that Plaintiff suffers from an actual or threatened injury, the Court must determine whether that injury "fairly can be traced to the [Defendants'] action." *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 41, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). Plaintiff claims that his inability to provide abortion services is traceable to the two Washington Township zoning resolutions. In his verified Amended Complaint (Doc. # 40), Plaintiff avers that he has had continuous intent to establish an abortion clinic in Washington Township and that the zoning regulations have been the primary deterrent to his establishing such an office. *See* Doc. # 40 at ¶ 50. Plaintiff further avers that he owns land on Marco Polo Lane in Washington Township and that he could establish an abortion clinic either there or at the Paragon Office Building were it not for the B–3 zoning requirement. Defendants argue that Plaintiff has not attempted to obtain a zoning change for the property on Marco Polo Lane and that, according to the deposition of Frank McGee, manager of Paragon Office Building, Plaintiff is no

longer interested in acquiring ownership of or leasing space in that building.[2]

The deposition of Frank McGee, however, does not indicate Plaintiff no longer has an interest in the Paragon Office Building—it merely indicates Dr. Haskell did not pursue his interest in that building through Mr. McGee. The letter to Dr. Haskell from Frank and Fran Swift (Exh. 1 to Doc. # 69) corroborates Dr. Haskell's assertion that he continued to have an interest in purchasing the building as of January 26, 1982. Defendants have produced no evidence controverting this letter. Thus, this evidence in the record supports Plaintiff's assertion that he intends to establish an abortion clinic in Washington Township, at either the Paragon Office Building or his land on Marco Polo Lane.

Defendants' assertion that Plaintiff has not attempted to obtain a zoning change for his land on Marco Polo Lane is not relevant to the question of whether Plaintiff's alleged injury is traceable to the zoning resolutions. The zoning resolutions, which on their face place abortion clinics in a different classification than other medical facilities, would require Plaintiff to choose between seeking rezoning to a classification allowing only abortion services (B–3), which he is arguing is unconstitutional, and one allowing ordinary medical services (B–1 or B–2), which is where abortion services could not be located under the 1982 or 1986 resolutions. Under the 1982 and 1986 resolutions, a rezoning of Plaintiff's land as B–1 or B–2, which would allow him to open a medical office, would not allow him to open an abortion clinic. Thus, at this point, it would be futile for Plaintiff to attempt to get his land zoned as B–1 or B–2. Plaintiff, thus, is *threatened* with injury traceable to the zoning regulations because seeking rezoning will cause him actual injury either in having to comply with the allegedly unconstitutional requirements of B–3 zoning or in being barred from offering abortion services by seeking B–1 or B–2 zoning.

Plaintiff is challenging the constitutionality of statutes which limit abortion clinics to the B–3 classification areas, not a denial of a request to rezone his land. Thus, it is the zoning statute, not a particular action of the zoning authorities, that is the cause of Plaintiff's alleged injury. While a favorable action by the zoning authority could allow Plaintiff to perform abortions in Washington Township, it would not affect his claim that the statute itself requires him to comply with unconstitutional standards to get the zoning change. Thus, Plaintiff is injured by the zoning resolutions regardless of whether he seeks rezoning. All Plaintiff need show to prove that he has standing is that his inability to open an abortion clinic in Washington Township is traceable to the zoning resolutions.[3]

Accordingly, the Court must conclude that Plaintiff's alleged injury is traceable to Washington Township's zoning resolutions. Plaintiff has averred his intent to open an abortion clinic in Washington Township, and has shown that he owns

---

**2.** Defendants also seek to use two newspaper clippings from 1981 to contest Plaintiff's claim that he has always been interested in opening an abortion clinic in Washington Township. *See* Exh. D. and E to Doc. # 50. These clippings are hearsay which does not fall within the exceptions enumerated in Fed.R.Evid. 803, and therefore they are not admissible to prove the truth of the matters asserted herein. Further, the statements attributed to Dr. Haskell in these newspaper clippings indicate *only* that he abandoned his plan to establish an abortion clinic in the Paragon Office Building, and therefore are not relevant to the credibility of Dr. Haskell's assertion that he has always intended to open an abortion clinic in Washington Township. Thus, the credibility of Dr. Haskell's asserted

intent to open an abortion clinic in Washington Township is uncontroverted.

**3.** The Court also notes that if Plaintiff were to obtain rezoning of the Marco Polo Lane land to B–3 controlled use under the 1982 resolution or to B–3 conditional use under the 1986 resolution, he would be barred from using that property for non-abortion medical services. Thus, if the Court were to require Plaintiff to seek to obtain rezoning prior to commencement of a challenge to the resolutions, he could conceivably gain rezoning, continue his challenge because of required conditions for businesses in B–3 zones, win his challenge and then again have to seek rezoning.

land there and that he has pursued (at least until 1982) the possibility of purchasing the Paragon Office Building. Both the 1982 and 1986 zoning resolutions would bar establishment of an abortion clinic at either the Paragon Office Building or the land on Marco Polo Lane unless those properties were rezoned. Rezoning of either property, absent a determination of whether the 1982 and 1986 resolutions are constitutional, would be futile. Forcing Plaintiff to make a rezoning choice threatens him with injury, because if he makes the decision, he suffers actual injury regardless of which option he chooses. Therefore, the Court must conclude that there exists a "causal connection between the assertedly unlawful conduct [the zoning resolutions] and the alleged injury...." *Allstate Ins. Co. v. Wayne County*, 760 F.2d at 692 (quoting *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 3326 n. 19, 82 L.Ed.2d 556 (1984)).

The third prong of the injury in fact test, as noted above, requires the Court to find that Plaintiff's alleged injury "is likely to be redressed by a favorable decision." *Simon*, 426 U.S. at 38, 96 S.Ct. at 1924. In this case, a favorable decision, that is, a decision declaring the zoning resolutions unconstitutional, would permit Plaintiff to seek rezoning of his Marco Polo Lane land to allow opening of a medical office on that land which would serve as an abortion clinic, or, if economically more advantageous, would permit him to open an abortion clinic in the Paragon Office Building, which is apparently already zoned to allow medical offices. Thus, it is clear that "there is a 'substantial likelihood' that the relief requested will redress the injury claimed," *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 75 n. 20, 98 S.Ct. 2620, 2631 n. 20, 57 L.Ed.2d 595 (1978), and therefore the Court finds that

Plaintiff's alleged injury is redressable by the relief requested.

In sum, the Court finds that Plaintiff has shown that no genuine issue of material fact exists as to his claims that he has suffered actual or threatened injury,[4] that this injury is traceable to Defendants' zoning resolutions and that the remedies requested by Plaintiff would redress his injury. Accordingly, the Court concludes that Plaintiff has shown sufficient injury in fact to meeting the standing requirement of Art. III.

B. *Proper Proponents of Particular Legal Rights*

◼ Having determined that Plaintiff has shown sufficient injury in fact to meet the constitutional limitations on standing, the Court must next determine whether Plaintiff passes the prudential limitations on standing. "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest on his claim to relief or the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. at 499, 95 S.Ct. at 2205 (citing *Tileston v. Ullman*, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943); *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); and *Barrow v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953)); *see also Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984); *Allstate Ins. Co. v. Wayne County*, 760 F.2d at 693.[5] However, the courts have recognized that situations exist in which a plaintiff may have standing to raise the claims of third parties:

Where practical obstacles prevent a party from asserting rights on behalf of itself, for example, the Court has recognized the doctrine of *jus tertii* standing.

---

4. Genuine issues of material fact do remain, of course, as to what *damages* Plaintiff has suffered as a result of Defendants zoning resolutions. *See* Fed.R.Civ.P. 56(c).

5. Two other prudential limitations on standing have been identified by the Courts: "the plaintiff's interest must come within the 'zone of interests' arguably protected or regulated by the law in question" and "the courts will not hear 'generalized grievances' shared in substantially equal measure by all or a large class of citizens ...." C. Wright, *The Law of Federal Courts* 70–71 (4th ed. 1983). Neither of these is applicable to this case.

In such a situation, the Court considers whether the third party has sufficient injury-in-fact to satisfy the Article III case or controversy requirement, and whether, as a prudential matter, the third party can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal. *Munson*, 104 S.Ct. at 2847.

■ *Singleton v. Wolff*, 428 U.S. at 114–16, 96 S.Ct. at 2874–75; indicates that two factual elements must be found to permit a plaintiff to raise the rights of third persons. First, the Court must find that "the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue...." *Id.* at 114, 96 S.Ct. at 2874. Second, the Court must find that there "is some genuine obstacle to" the third party asserting his or her own right. *Id.* at 115–16, 96 S.Ct. at 2874–75.

■ In the present case, the Court first notes that the ability of a woman to secure a safe abortion is "inextricably bound up with" the freedom of physicians, such as Dr. Haskell, to perform such abortions. Furthermore, "the constitutionally protected abortion decision is one in which the physician is intimately involved." *Id.* at 117, 96 S.Ct. at 2875 (citing *Roe v. Wade*, 410 U.S. 113, 153–56, 93 S.Ct. 705, 727–28, 35 L.Ed.2d 147 (1973)). *See also Family Planning Clinic, Inc. v. City of Cleveland*, 594 F.Supp. 1410, 1413 (N.D.Ohio 1984) (a woman's right to seek an abortion is "inextricably bound up" with the ability of a clinic to secure an operating license); *West Side Women's Services v. City of Cleveland*, 573 F.Supp. 504, 510 (N.D.Ohio 1983) ("The physician-patient relationship that arises when a woman seeks an abortion is sufficiently close to meet this ['inextricably bound up'] requirement.").

The Court also finds that there is a "genuine obstacle to" women who desire abortions in Washington Township asserting their right to have such abortions. The Supreme Court, in *Singleton v. Wolff*, dis-

cussed two such obstacles for women seeking abortions:

> For one thing, she may be chilled from such assertion by a desire to protect the very privacy of her decision from the publicity of a court suit. A second obstacle is the imminent mootness, at least in the technical sense, of any individual woman's claim.

428 U.S. at 117, 96 S.Ct. at 2875. The expense to an individual in litigating a challenge to an allegedly illegal statute is another obstacle for women desiring abortions. *Family Planning Clinic*, 594 F.Supp. at 1413.

Taking these two factual conclusions together, the Court finds that Plaintiff meets the requirements for *jus tertii* standing to raise the rights of women seeking abortions in Washington Township. This finding is in accord with a long line of decisions which have found that physicians have standing to raise their women patients' due process rights in a challenge to anti-abortion legislation. *See, e.g., Singleton v. Wolff*, 428 U.S. at 118, 96 S.Ct. at 2876; *Birth Control Centers, Inc. v. Reizon*, 743 F.2d 352, 358 (6th Cir.1984); *Akron Center for Reproductive Health v. City of Akron*, 651 F.2d 1198, 1211 (6th Cir.1981); *Family Planning Clinics*, 594 F.Supp. at 1413. Taking its findings that Plaintiff has shown both that he has suffered injury in fact and that he falls within the *jus tertii* exception to the prudential limitations on standing, the Court concludes that Plaintiff has standing to bring this lawsuit.

## II. *The 1982 Resolution*

Having found that Plaintiff has standing to challenge the Washington Township zoning resolutions concerning abortion services and clinics, the Court must examine the merits of Plaintiff's challenge, beginning with his challenge to the 1982 resolution. That resolution limits establishments providing abortion services to property in B–3 zones which has been granted an application for controlled use.[6] *See* Minutes of

---

**6.** An application for controlled use must be made to the Washington Township Zoning Com-

mission. In order for the Commission to grant a controlled use, it must give due regard for the

Washington Township Trustees Meetings, October 20, 1981 and February 16, 1982, and Resolution # 81–248, Exh. # 9, # 10 and # 11 to Plaintiff's Exhibits to Complaint (Doc. # 2). Plaintiff argues that a zoning ordinance such as Defendants' 1982 resolution must be based upon a legitimate and compelling interest and must be narrowly drawn to effectuate that interest. Plaintiff asserts that Washington Township has failed to show a compelling basis for limiting abortion services to areas zoned B–3. Defendants, on the other hand, argue that the 1986 resolution has made Plaintiff's challenge to the 1982 resolution moot. They also challenge the standard of review urged by Plaintiff, and argue that genuine issues of fact exist both as to what burden the 1982 resolution placed upon the abortion decision and as to the Township's justifications for the resolution.

### A. *Mootness*

■ Defendants argue that the passage of the 1986 changes to the Washington Township Zoning Resolution, which substantially amends the scheme of zoning regulation over abortion clinics and services, moots Plaintiff's claims under the 1982 resolution. This argument is without merit. While Plaintiff's demand for injunctive relief as against the 1982 resolution is plainly moot, Plaintiff continues to have a claim against the Defendants for any financial loss he can prove he suffered in the period between passage of the 1982 resolution and passage of the 1986 resolution. *See, e.g., West Side Women's Services v. City of Cleveland,* 573 F.Supp. 504, 508–09 (N.D.Ohio 1983). Defendants' mootness argument is therefore rejected.

### B. *Standard for Review of the 1982 Resolution*

Before reviewing the facts on the record for this Motion for Summary Judgment, the Court must determine the proper standard for review of the 1982 resolution.

■ In determining a standard for review of the 1982 resolution, the Court must first define the right Plaintiff claims to have been infringed. In *Roe v. Wade,* 410 U.S. 113, 153, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1973), the Supreme Court held that the "right of privacy ... founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action ... is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." As the District Court for the Northern District of Ohio has pointed out:

> Although the Court in *Roe* held specifically that it is the *decision* to have an abortion that is constitutionally protected, later cases have demonstrated that not only the decision, but also the *effectuation* of the decision to abort a pregnancy, is protected. Based on these cases, not only may the State not interfere with the physician-patient relationship essential to the woman's decision-making process, but the steps it takes to restrict access to abortions or regulate the abortion procedure itself will also be closely scrutinized.

*West Side Women's Services,* 573 F.Supp. at 513 (footnote omitted) (emphasis in original); *see also Mahoning Women's Center v. Hunter,* 610 F.2d 456 (6th Cir.1979) (ordinance "removes effective enjoyment" of right by imposing unconstitutional conditions on performance of the operation). Thus, in addition to protecting the woman's decision to have an abortion itself, the Constitution protects the effectuation or carrying out of that decision.

■ However, not all laws that impact upon the effectuation of a woman's decision to abort a pregnancy are unconstitutional. In determining the constitutionality of a law related to the effectuation of the abortion decision, the threshold question is whether the challenged law places

---

nature and condition of all adjacent buildings and uses and must determine the proposed use will not be of substantial detriment to the adjoining property. The Commission may also impose such additional requirements on the use of the property as the Commission deems necessary. *See* Washington Township Zoning Resolution, Art. 16, Section 3.

"obstacles in the path of a woman's freedom of choice" or merely refuses to remove those obstacles not of the government's own creation. *Harris v. McRae*, 448 U.S. 297, 316, 100 S.Ct. 2671, 2687–88, 65 L.Ed.2d 784 (1980); *Maher v. Roe*, 432 U.S. 464, 474, 97 S.Ct. 2376, 2382–83, 53 L.Ed.2d 484 (1977) (laws which "impose no restriction on access to abortions that was not already there" not unconstitutional); *Family Planning Clinic, Inc. v. City of Cleveland*, 594 F.Supp. 1410, 1415–16 (N.D. Ohio 1984); *West Side Women's Service*, 573 F.Supp. at 515–16. If the Court finds that a law creates an obstacle to a woman's freedom of choice as to whether to have an abortion which causes a more than *de minimis* burden, the Court must apply a strict scrutiny standard of review:

> [T]he higher level of scrutiny will be used to evaluate regulations having a substantial burden on the abortion decision. "Burden" as used here, refers not only to the degree but also the nature of the regulation. Such regulations must be justified by a compelling state interest, and will be deemed invalid if the proffered justifications are not substantial enough to justify the burden imposed. On the other hand, if the challenged regulation imposes only a de minimis burden on the abortion decision, the rational relationship test will be used.

*West Side Women's Service*, 573 F.Supp. at 517; *see also Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 334–38 (5th Cir.1981) ("The claimed justifications, in order to withstand scrutiny, must fit into a defined plan or scheme of logical development serving legitimate state ends."); *Friendship Medical Center v. Board of Health*, 505 F.2d 1141, 1150 (7th Cir.1974) ("Under traditional analysis, exercise of the police power need only bear some rational relationship to a legitimate governmental interest," but "where fundamental rights are involved regulations limiting these rights may be sustained only by a 'compelling state interest.' "); *Family Planning Clinic*, 594 F.Supp. at 1417–19. In sum, if the Court determines that the 1982 zoning resolution creates more than a *de minimis* obstacle to the exercise of women's abortion rights, then it must strictly scrutinize that resolution to see whether the compelling community interest of Washington Township outweighs the burden that the resolution places upon the abortion rights of women.

Defendants argue, however, that under the authority of the Supreme Court's recent decision in *City of Renton v. Playtime Theatres, Inc.*, —— U.S. ——, 106 S.Ct. 925, 926, 89 L.Ed.2d 29 (1986), review of the 1982 resolution is limited to the standard of review for content-neutral time, place and manner regulations of speech. The Court disagrees. The rights affected by the zoning ordinance in *Renton* were those enjoyed by adult motion picture theatres under the first amendment. The Supreme Court has long held that obscene materials are entitled only to limited first amendment protection. *See Schad v. Mount Ephraim*, 452 U.S. 61, 65–66, 101 S.Ct. 2176, 2180–81, 68 L.Ed.2d 671 (1981); *United States v. Orito*, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). On the other hand, the Supreme Court has repeatedly recognized a woman's right to an abortion to be fundamental. *See, e.g., Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 426–27, 103 S.Ct. 2481, 2490–91, 76 L.Ed.2d 687 (1983); *Roe v. Wade*, 410 U.S. at 153, 93 S.Ct. at 727. "[T]he standard of review is determined by the nature of the right asserted threatened or violated rather than by the power being exercised or the specific limitations imposed." *Schad v. Mount Ephraim*, 452 U.S. at 68, 101 S.Ct. at 2182, *quoted in Family Planning Clinic*, 594 F.Supp. at 1415. Thus, in finding the standard of review, the important fact is that this lawsuit concerns women's abortion rights, not that the resolution is a zoning law. Accordingly, the Court must reject Defendants' suggestion that it apply the *Renton* standard of review, and instead the Court must strictly scrutinize the resolution if it determines that the resolution creates more

than a *de minimis* obstacle to women's abortion rights.

### C. *Application of Standard to the Record*

■ Having found the standard for review of the 1982 resolution and having examined the record in the present case, the Court finds that no genuine issues of material fact exist and, accordingly, must grant Plaintiff's Motion for Summary Judgment on the unconstitutionality of that resolution.[7] The Court first notes that the 1982 resolution created a new obstacle to women's enjoyment of their right to an abortion. Prior to the enactment of the 1982 resolution, Washington Township had no zoning regulation specifically governing the location of establishments providing abortion services. *See* Resolution # 81-248, Exh. # 10 to Plaintiff's Exhibits to Complaint (Doc. # 2) ("the Washington Township Zoning Resolution does not specifically address the subject of abortion services"). Prior to passage of the 1982 resolution abortion services could be performed at any property zoned for medical offices. Therefore, the Court must conclude that the 1982 zoning resolution created a new obstacle to women seeking to exercise their right to an abortion.

Further, the Court finds that the burden imposed by the 1982 resolution on women seeking an abortion is more than *de minimis*. While the Court believes that detailed discussion of the extent of the resolution's burdensomeness is properly reserved for the Court's analysis of the balance between the burden caused by the resolution and the compelling Township interests in support of the resolution, the Court notes that in light of the amount of land zoned as B-3 in Washington Township, the resolution substantially burdens the rights of women desiring abortions. Plaintiff avers that only 3.317 acres of Washington Township are zoned B-3, and that this land is already occupied by a cement company. Defendants have produced no evidence to contradict this assertion and, indeed, apparently concede this to be true. *See* Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. # 50) at 3. This fact in itself demonstrates that the burden imposed by the 1982 resolution is substantial. Accordingly, the Court must review that resolution under the strict scrutiny standard.

In a strict strutiny review of a law, the Court must examine whether a compelling state (or municipal) interest justifies the regulation. If the Court finds a compelling municipal interest supports the law, it must weigh that interest against the nature and degree of the burden the law places upon women's abortion rights. *See, e.g., West Side Women's Services,* 573 F.Supp. at 517. The Court notes that Defendants, in responding to Plaintiff's Motions for Summary Judgment, have failed to specifically set forth reasons to justify the abortion zoning ordinance. However, from the minutes of the Washington Township Trustee Meeting of October 20, 1981 and February 16, 1982 (Exh. # 9 and # 11 to Doc. # 2) and from the depositions of Defendants Walter A. Buchanan, Russell W. Miller and Ronald Smith, several justifications for the 1982 resolution can be discerned. The deposition of Walter A. Buchanan sets forth the Trustees' justification for the zoning change most clearly:

Q. Well, specifically, what were the purposes of restricting abortion services to the B-3 area?

A. Well, one purpose, for my, I'm speaking only for myself, is that I, I have an appreciation of the process. We've always upheld life over death. And at the same time as an elected official, I wanted to take this very controversial subject out of the political arena and not have the decisions made by elected officials but by a Board, non-elected officials

---

**7.** The Court notes that "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that three is a genuine issue for trial. Fed.R.Civ.P. 56(e).

like the Board of Zoning Appeals whose decisions are appealable to the Court of Common Pleas. And it bypasses the electoral process. And I felt that that would be the fair and objective way in which this could be done. If you put it through a non-controlled use and permit it in a blanket district such as B–1, B–2, or B–3 and say they can have it, then our rezoning of such property, if approved, would be subject to public referendum which could go, in spite of the community consensus, could go contrary to law as enunciated by the Supreme Court. So we felt that this could be a way to go that would take it out of politics.

Now, the reason specifically for it in B–3 is the fact that we have three business categories in the township. One is neighborhood business, which is B–1, which means this is a shopping center or a store or something that is set down right in the middle of the neighborhood.

Then we have two, community business, which means that these are businesses the predominant trade would come from within the community. B–3, such as a concrete block plant and abortion clinic and may other types of businesses, have far-reaching clientele that come from other communities, from other counties and possibly from other states.

Buchanan deposition at 60–61 (corrected at 79).[8] The depositions of Defendants Miller and Smith concur in these justifications. *See* Miller Deposition at 6; Smith Deposition at 14.

Summarizing Mr. Buchanan's assertions, three justifications are presented for the limitation of abortion services to areas zoned B–3 and approved for controlled use. First, it is asserted that as a policy, life should be upheld over death. Second, it is asserted by limiting the services to areas approved for conditional use, the zoning of abortion services is insulated from political controversy. Finally, it is asserted that abortion services draw clientele from outside the Washington Township community, and therefore restrictive zoning is necessary.

Defendants' first justification for the 1982 resolution, given the factual background of that resolution, fails to state a compelling state interest sufficient to support the restrictions imposed. As the Court has noted above, a governmental body may adopt regulation which favors childbirth over abortions if that law does not impose a new obstacle to the effectuation of a woman's right to decide whether to have an abortion. *See Maher v. Roe*, 432 U.S. at 474, 97 S.Ct. at 2382–83. The Washington Township 1982 resolution, however, does place a new obstacle in the path of women seeking abortions. Prior to enactment of the 1982 resolution, no zoning regulation distinguished between abortion services and other medical services. The 1982 resolution imposes such a distinction, and would therefore require doctors desiring to perform abortions to seek an entirely different zoning classification from that in which they could previously have located their medical practice. Because of this effect of the 1982 resolution, it cannot be justified by the Township's policy of upholding "life over death."

Defendants' second justification for the 1982 resolution, that by requiring abortion services to be approved for controlled-use, the question of these services is removed from political controversy, presents, on its face, an attractive justification for the zoning rule. However, upon close scrutiny, it is apparent that this justification is relevant only if the Court accepts the validity of the requirement that abortion services be zoned as B–3 instead of B–1 or B–2. If, as was the rule prior to the enactment of the 1982 resolution, abortion services could operate in B–1 or B–2 zones, then the re-

---

**8.** Mr. Buchanan also indicated in his deposition that the resolution was proposed because abortion was illegal at the time the Washington Township Zoning Resolution was enacted, and thus periodic resolutions were necessary to keep the zoning rules up to date. *See* Buchanan Deposition at 59–60. While this assertion may be true, it does not provide a justification for the specific form of amending resolution and the restrictions contained therein.

quirement of approval for controlled-use (B–3) would be an additional burden on those seeking to offer abortion services and on the effectuation of a woman's decision to have an abortion, rather than a protection against political pressure. Only in comparison with the allegedly more burdensome process of ordinary rezoning[9] does the requirement of approval for controlled use lessen the interference with a woman's abortion rights caused by the 1982 resolution. The proper comparison in this case is between controlled use and no new zoning restrictions. The Court, therefore, cannot find that the controlled use aspect of the resolution presents a compelling municipal interest justifying the 1982 resolution.

Finally, Defendants argue that Washington Township is justified in classifying abortion services as a B–3 use because such services draw a large portion of their clientele from outside of Washington Township. Presumably, the Washington Township Trustees believe that businesses which draw a large portion of their business from outside of the community tend to create additional traffic, noise and parking problems. Assuming *arguendo* that outside business raises these concerns, the Court believes that a compelling municipal interest exists in regulating these problems. Under the strict scrutiny standard of review, however, the Court cannot uphold a law which creates obstacles to women's rights to abortions merely because a compelling municipal interest exists. On a showing of a compelling municipal interest, the Court must weigh that interest against the nature and degree of the burden caused by the challenged regulation. *See, e.g., West Side Women's Services*, 573 F.Supp. at 517.

In the present case, the Court must conclude that the burden caused by the 1982 resolution is so substantial that the municipality's legitimate interests in regulating

such things as parking, noise and traffic do not justify the resolution. As Washington Township was zoned from 1982 to January, 1986, only 3.317 acres were classified as B–3 and this land is already occupied by a cement factory. In effect, the B–3 zoning requirement completely bars abortion services from Washington Township. Defendants argue, however, that the Plaintiff may seek rezoning of land in Washington Township to B–3, and thus is not barred from offering abortion services in Washington Township. The process of rezoning in Washington Township, however, in itself imposes a substantial burden on those who desire to provide abortion services. Even assuming *arguendo* that Defendants' description of the process under a controlled use requirement is true and a potential provider of abortion services is not required to submit his or her request for rezoning to a public referendum, the process still requires that the application be examined under requirements unrelated to the legitimate concerns for traffic, noise and parking control. Under the Township regulations, an application for controlled use must be considered in light of the existing uses of adjoining property and the controlled use cannot be a substantial detriment to adjoining property. *See* Washington Township Zoning Resolution, Art. 16, Section 3. In practice, this requires the applicant to show far more than that its use will not produce noise, traffic or parking problems.

The Court, therefore, must conclude that the 1982 resolution is not justified by the Township's compelling interests in regulating the influx of business users from outside of the community. The Court notes that the Township has a number of options for regulation of the problems caused by the influx of outside clientele of abortion services short of nearly completely banning those services. Narrowly drawn zoning regulations designed specifically to prevent

---

**9.** The Court also notes that it is by no means clear that the requirement of approval for controlled use would remove the abortion issue entirely from the realm of political controversy. The zoning commission is apparently required

to weigh the concerns of an applicant's neighbors before granting approval for controlled use. This process leaves considerable room for political pressure, albeit upon an appointed rather than upon an elected Board.

noise, traffic or parking problems could protect the Township interests without substantially burdening the rights of women seeking abortions. Thus, the Court must find that the 1982 resolution, designed to protect the Township against the problems caused by the influx of outside clientele, fails to justify the substantial burden that the resolution places on women's abortion rights.

Accordingly, the Court must conclude that Defendants have failed to offer any satisfactory justification for the burden on abortion rights created by the 1982 resolution. The Court, therefore, concludes that that resolution unconstitutionally infringes upon the effectuation of women's abortion decision rights.

### III. *The 1986 Resolution*

■ On January 16, 1986, the Washington Township Trustees amended the Zoning Resolution to greatly expand the classes of business allowed in B–3 districts, and to zone an "abortion clinic" as conditional use B–3. *See* Exhibit attached to Defendants' Supplemental Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. # 67). The amendment does not define "abortion clinic." The Court must, therefore, find that the Washington Township Zoning Resolution, insofar as it regulates the zoning of abortion clinics, is unconstitutionally vague.

The principle that laws must not be excessively vague is deeply rooted in the constitutional guarantee of due process of law. As the Supreme Court explained in *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972):

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

(footnotes omitted).

In the present case, the Court first notes that the Washington Township Zoning Resolution makes violation of its provisions a misdemeanor subject to a $100 fine per day of violation. *See* Washington Township Zoning Resolution, Art. 15, Section 5. Criminal and quasi-criminal laws must be reviewed under a relatively strict standard. *See Village of Hoffman Estates v. The Flipside, Hoffman Estates*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193–94, 71 L.Ed.2d 362 (1982). Thus, the 1986 amendment to the Washington Township Zoning Ordinance must be closely reviewed for vagueness.

The basic standard of review for vagueness has been set forth by the Sixth Circuit in *Fleming v. United States Department of Agriculture*, 713 F.2d 179, 184 (6th Cir. 1983):

[D]ue process requires that government regulations and statutes provide adequate warning as to what they command or forbid such that persons of common intelligence will not have to guess as to their meaning and may act accordingly.... When the persons affected by the regulations are a select group with specialized understanding of the subject being regulated the degree of definiteness required to satisfy due process concerns is measured by the common understanding and commercial knowledge of the group.

*See also Diebold, Inc. v. Marshall*, 585 F.2d 1327, 1336 (6th Cir.1978).

Applying this standard to the 1986 amendment, the Court must conclude that the amendment is unconstitutionally vague on its face. As noted, the regulation contains no definition of abortion clinic. The term abortion clinic is not self-defining. It may mean any medical facility that is equipped to perform abortion services. It may mean only those facilities which exclusively provide abortions and advertise themselves as abortion clinics and, consequently, provide no other medical services. The line could be drawn at any of many conceivable medical establishments falling between these extremes. The Court knows of no specialized body of knowledge that adds definiteness to this term. Medical doctors could rationally and intelligently construe abortion clinic to mean anything within these extremes. In sum, the statute is not drawn narrowly enough that persons of either common intelligence or specialized knowledge would know when their medical practices, that primarily or incidentally provide abortion services, would cause them to be operating abortion clinics.

Therefore, the Court finds the 1986 amendment to the Washington Township Zoning Resolution to be unconstitutionally vague.[10]

IV. *Statute of Limitations*

Finally, the Court notes in reviewing the Amended Complaint (Doc. # 40) that the last events related to Plaintiff's § 1983 claim based upon the Defendants' parking space investigation occurred in October of 1981. The initial Complaint in this action was filed March 18, 1983, more than one year later. In *Mulligan v. Hazard*, 777 F.2d 340 (6th Cir.1985), the Sixth Circuit held that a one year statute of limitations applies in § 1983 actions arising in Ohio. This limitation on actions applies retroactively. *Id.* at 344. This relatively short statute of limitations period was not in effect when Defendants filed their answer to Plaintiff's Amended Complaint, and so Defendants did not knowingly waive that defense. Since the Defendants could amend their answer to conform to the evidence at trial, and then move for a directed verdict on Plaintiff's parking space claim, *see Adkins v. International Union of Electrical Workers*, 769 F.2d 330 (6th Cir. 1985), the Court believes that, in the interest of judicial economy, this issue should be addressed now. Accordingly, Defendants are granted leave to file an amended answer and a Motion for Partial Summary Judgment, raising the statute of limitations defense, within three days of receipt of this decision. If Plaintiff desires to oppose this motion, he must file his Memorandum in Opposition thereto within three days of the filing of Defendants' motion. Presuming that the one year statute of limitations bars Plaintiff's claims arising from the parking space investigation, though the Court is aware that Plaintiff may rebut this presumption, the only issue remaining to be resolved at trial is the amount of Plaintiff's damages resulting from the 1982 and 1986 resolutions. A telephone conference will be held with counsel to determine whether this issue can be resolved through a hearing and Report and Recommendation by the United States Magistrate or if a trial to the Court during the week of April 28, 1986 is necessary.

10. This Opinion will not be journalized in the form of a Judgment Entry until completion of trial on the remaining issue(s). The Court's opinion concerning the unconstitutionality of the two zoning resolutions will not become a judgment of the Court until this Opinion is journalized in the form of a Judgment Entry.