864 F.2d 1266
 12 Fed.R.Serv.3d 965
 W. Martin HASKELL, M.D., Plaintiff-Appellant,
v.
WASHINGTON TOWNSHIP; Walter A. Buchanan, Trustee,
Washington Township Board of Trustees, Individually and in
his Official Capacity; Russell W. Miller, Trustee,
Individually and in his Official Capacity; Ron Smith,
Zoning Inspector, in his Official Capacity; Gary Huff
(Director of Development and Zoning), Defendants-Appellees.
 No. 87-3927.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 21, 1988.
Decided Dec. 20, 1988.
 
 John A. Cumming, Coolidge, Wall, Womsley & Lombard, Dayton, Ohio, Roy Lucas (argued), Cincinnati, Ohio, for plaintiff-appellant.
 John R. Koverman, Jr. (argued), Patrick K. Smith, Dayton, Ohio, for defendants-appellees.
 Before MERRITT, MARTIN and MILBURN, Circuit Judges.
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiff-appellant W. Martin Haskell, M.D., appeals from the judgment of the district court dismissing his civil rights action filed pursuant to 42 U.S.C. Sec. 1983. This case involves a long history of Haskell's unsuccessful attempts to open a clinic in Washington Township, Ohio ("the Township") where outpatient surgery and abortions would be performed. The principal issues on appeal are (1) whether the district court erred in holding that certain of Haskell's claims were barred by the statute of limitations; (2) whether the district court erred in concluding that Haskell lacked standing to bring this action; (3) whether the district court erred in failing to enter judgment declaring certain Washington Township zoning ordinances unconstitutional; (4) whether the district court should have awarded attorney's fees and costs pursuant to 42 U.S.C. Sec. 1988; (5) whether the district court erred in precluding Haskell from adding his wholly owned corporation as a party plaintiff; (6) whether the district court erred in dismissing the individual Township Trustees on the basis of qualified immunity; and (7) whether the district court erred in concluding that Haskell's proof of damages was insufficient. For the reasons that follow, the judgment of the district court is reversed.
 
 I.
 A. Factual Background
 
 2
 Haskell, a board-certified family practitioner, began to include in his practice the performance of out-patient, first trimester surgical abortions in 1977. From 1977 through 1980, he was Director of the Emergency Room at Jewish Hospital in Cincinnati, Ohio, and became the owner and physician-manager of the Women's Center in Cincinnati in 1979. The Women's Center is an out-patient surgical facility for early abortion procedures. Haskell has also maintained an interest in expanding the role of out-patient surgery.
 
 
 3
 In May of 1981, he consulted a Cincinnati medical architect, Robert Fox, about federal design standards and requirements for out-patient surgical facilities (surgicenters) and what type of property would lend itself to surgicenter adaptation. In September of 1981, Haskell located the Paragon Office Building in Washington Township, Ohio, and he and Fox designed a surgicenter where out-patient abortion surgery and other minor surgical procedures could be performed. On September 24, 1981, Haskell paid one and one-half month's rent to the owners of the Paragon Office Building for the use of one suite through October 31, 1981. The suite was not located in the part of the building where the proposed surgicenter was to be constructed, and no surgery was conducted in the brief period that it was used. However, telephones and an exam table were installed.
 
 
 4
 Haskell claims that over 200 different kinds of minor surgery can be performed safely in the type of surgicenter he and Fox envisioned. He also claims that through his established practice, he has approximately 2,500 doctors in the overall market area who have previously referred patients to him.
 
 
 5
 On October 8, 1981, Haskell signed a five-year lease for approximately 3,000 square feet on the first floor of the Paragon Office Building. The lease would have started when renovations were completed, and Haskell obtained architectural drawings for the anticipated renovations. Additionally, Haskell made an offer to purchase the Paragon Office Building, and the offer was conditionally accepted.
 
 
 6
 On October 6, 1981, however, a group of Washington Township citizens attended a meeting of the Washington Township Board of Trustees[1] to express their opposition to abortion and to the proposed surgicenter. At that meeting, the Township Trustees voted to request an interpretation of the existing zoning regulations from the Montgomery County, Ohio, attorney.
 
 
 7
 The next day, October 7, 1981, at the request of the Trustees, the Township zoning inspector measured the office building and its parking lot and reported that the building complied with the Township's zoning requirements for off-street parking. Moreover, from the time the building was given a certificate of occupation upon its completion in 1978, through October 7, 1981, no zoning enforcement action was ever taken against the building for parking deficiencies. Ron Smith, a former zoning inspector of Washington Township, testified that it was quite unusual for the Trustees to be involved in any decision concerning a building's compliance with the Township's off-street parking requirements.
 
 
 8
 Subsequent to the October 6, 1981, meeting, the Township Trustees were driven to the Paragon Office Building parking lot by John Koverman, an owner of the Paragon Supper Club, which was located across the street from the office building. Trustee Duane Snyder later testified at the trial of this case that the purpose of the unpublicized meeting was to consider the idea of using inadequate parking as a means of stopping the opening of the proposed abortion clinic. According to Snyder, the parking issue was a pretext, as it was to be used not as a means to enforce compliance with zoning regulations but to stop the opening of the proposed abortion clinic.
 
 
 9
 On October 17, 1981, Snyder met with Haskell and informed him that defendant Township Trustee Walter Buchanan was really pushing the parking issue. He also informed Haskell that if the parking angle did not work, the Trustees intended to do whatever necessary to keep the abortion clinic out of Washington Township.
 
 
 10
 At an executive session held on October 18, 1981, the Trustees determined that the building was without sufficient parking, and passed a resolution to hire an attorney to initiate legal proceedings against the owners of the Paragon Office Building. The resolution was passed in spite of the zoning inspector's conclusion that the building was in compliance with parking regulations. Moreover, both Evelyn List, Township zoning inspector at the time, and Ron Smith, List's successor, testified that the Township would ordinarily work with a business to find adequate parking. In fact, at the time of trial, the record reflects that the parking lot in question had been lined and had more than sufficient parking to comply with zoning requirements.
 
 
 11
 The record also reflects considerable additional effort undertaken by defendant Buchanan and the other Trustees to prevent the opening of Haskell's clinic. The manager of the Paragon Office Building, Frank McGee, testified that Buchanan came to his real estate office to see if anything could be done to stop the opening of the abortion clinic. McGee testified that he was given the impression that if he could not do anything to stop the opening of the clinic, "it wouldn't be in [his] best interests as a realtor in Washington Township." McGee testified that Buchanan was concerned that the opening of an abortion clinic would bring "an undesirable element" into Washington Township.
 
 
 12
 Fran Swift, a co-owner of the office building, also received a visit from Buchanan. She informed Buchanan that the parking area had previously been approved and that there had been no problems since the building opened. Buchanan then informed her that Haskell would not go forward with the purchase, "and asked us not to pursue it any further." Swift testified that Buchanan informed her that all residents and lessees of the building would be forced to evacuate and that the building would be closed if she allowed an abortion clinic to open.
 
 
 13
 Evelyn List, former Township zoning inspector, testified that Buchanan applied pressure on her as well. She testified that the Township was normally quite flexible in dealing with the parking requirements for buildings. However, Buchanan informed List that he wanted to close down the building if Haskell remained in the picture. List testified that Buchanan was very much opposed to abortion, and also indicated "that he did not want any undesirable people from West Dayton coming to the Township."
 
 
 14
 Haskell's wife, Valerie Haskell, testified that she overheard a conversation between Buchanan and Frank McGee, while in McGee's real estate office. She testified that Buchanan stated that "we don't want undesirables coming in from the west side of Dayton into our Township, and we've got to do whatever we need to keep them out."
 
 
 15
 Duane Snyder, President of the Board of Trustees at the time, also testified concerning Buchanan's involvement in considerable efforts to stop the opening of the clinic. Snyder testified that on several instances, Buchanan stated "that he felt this was not a type of institution that belonged in Washington Township." Moreover, Snyder claimed that Buchanan was concerned that the clinic would possibly draw a lower class of citizens to the community.
 
 
 16
 After learning of the Trustees' decision to initiate legal proceedings to block the opening of his proposed surgicenter due to inadequate parking, and in light of his conversation with Trustee Snyder, Haskell announced that he was abandoning his plan to open the facility in the Paragon Office Building on October 19, 1981. He did not purchase the building, and its owners released him from his lease on November 1, 1981. Thereafter, the Trustees took no further action regarding the alleged insufficient parking at the building.
 
 
 17
 Subsequent to Haskell's announcement, defendant Buchanan introduced an abortion-restrictive zoning ordinance at a Township meeting on October 20, 1981. He did not discuss the proposed ordinance with the other Trustees before introducing it. The proposed zoning resolution, which was subsequently enacted, placed abortion clinics in a different classification from other medical facilities. A doctor would be forced to choose between providing only abortion services or providing medical services other than abortions. Under the resolution, abortion clinics were zoned as B-3 and required that an application for controlled use be filed with and granted by the Township Zoning Commission. At the time, there were 3.317 acres of Washington Township zoned B-3, and all of it was fully occupied by a cement company.
 
 
 18
 On November 18, 1981, William Falknor, the Township's attorney, informed the board of Trustees that judicial review of a proposed ordinance would result in its being declared unconstitutional. On December 15, 1981, William Butterfield, county attorney for Montgomery County, informed the Trustees that it was his opinion that the zoning ordinance "would not withstand judicial scrutiny for the reason that it appears to violate the constitutional requirements of equal protection and due process." On January 14, 1982, the Township Trustees were informed by Seth Furnas, chairman of the Washington Township Zoning Commission, that the "zoning resolution would not withstand judicial scrutiny for the reason that it appears to violate the constitutional requirements of equal protection and due process." Despite the unanimous concurrence of the Township's legal advisors,[2] the zoning ordinance was officially adopted by the Trustees on February 16, 1982.
 
 
 19
 In 1984, Haskell purchased property in the Township to be used for construction of a women's center and surgicenter. However, Haskell later discovered that this property was unsuitable because of drainage problems, and abandoned the planned construction. He and his wife also acknowledged that they purchased the two lots in order to enhance their standing to object to the zoning ordinance.
 
 
 20
 On January 16, 1986, the Trustees amended the zoning resolution enacted in 1982 to greatly expand the classes of businesses allowed in B-3 districts. The amendment zoned an "abortion clinic" as a conditional use B-3, but did not define "abortion clinic."
 
 
 21
 Haskell ultimately opened a women's clinic at a location on Stroop Road in Kettering, Ohio. This location is closer to Dayton, Ohio, and requires approximately five to ten minutes more driving time from Cincinnati. Both Haskell and his wife contend that this location is less than satisfactory, and that they plan to close it down and relocate in Washington Township if they prevail in this case.
 
 B. Procedural Background
 
 22
 On March 18, 1983, Haskell filed this action seeking declaratory, injunctive, and monetary relief. He alleged that the defendants-appellees blocked his proposed out-patient medical clinic, which would have provided abortion services, by discriminatorily applying facially neutral parking regulations and by enacting an unconstitutional zoning ordinance. Haskell moved for partial summary judgment on his claim regarding the zoning ordinance on April 7, 1983. The defendants responded by filing a motion to dismiss his claim regarding the zoning ordinance for lack of standing. On May 24, 1983, Haskell moved for further partial summary judgment on his procedural due process claim based upon the alleged discriminatory application of parking regulations. Following substantial discovery, Haskell moved on December 21, 1983, for preliminary injunction to prevent the enforcement of the zoning ordinance. On January 26, 1984, the district court sustained the defendants' motion to dismiss Haskell's claim regarding the constitutionality of the zoning ordinance for lack of standing, and overruled Haskell's motion for partial summary judgment on that claim. Haskell v. Washington Township, 588 F.Supp. 528 (S.D.Ohio 1984) (Haskell I ).
 
 
 23
 On March 22, 1984, Haskell filed a motion for leave to file an amended complaint and also filed a renewed motion for partial summary judgment on the zoning ordinance claim. On June 10, 1985, the district court granted his motion for leave to file an amended complaint. On June 11, 1985, the district court issued a decision denying cross-motions of both Haskell and the defendants for summary judgment on the procedural due process and discriminatory parking enforcement claim. Haskell v. Washington Township, 624 F.Supp. 634 (S.D.Ohio 1985) (Haskell II ).
 
 
 24
 On March 24, 1986, the defendants filed a supplemental motion for partial summary judgment, alleging, in part, that the zoning ordinance at issue was no longer active since the Township Trustees had amended the zoning resolution on January 16, 1986. On April 17, 1986, the district court entered a decision granting Haskell's motion for partial summary judgment on the constitutionality of the ordinances at issue. Regarding the zoning ordinances, the district court concluded that Haskell had standing to sue and that the 1982 and 1986 zoning ordinances were unconstitutional. The district court concluded that the 1982 resolution unconstitutionally infringed upon the effectuation of women's abortion decision rights, and that the 1986 resolution was unconstitutionally vague. Haskell v. Washington Township, 635 F.Supp. 550, 561 (S.D.Ohio 1986) (Haskell III ).
 
 
 25
 Additionally, although a statute of limitations defense had not been raised, the district court sua sponte noted this court's holding in Mulligan v. Hazard, 777 F.2d 340 (6th Cir.1985), cert. denied, 476 U.S. 1174, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986), wherein this court held that a one-year statute of limitations would be retroactively applied to section 1983 actions arising in Ohio. The district court concluded that "[t]his relatively short statute of limitations period was not in effect when Defendants filed their answer to Plaintiff's Amended Complaint, and so Defendants did not knowingly waive that defense." 635 F.Supp. at 562. The district court then held that "in the interest of judicial economy, this issue should be addressed now. Accordingly, Defendants are granted leave to file an amended answer and Motion for Partial Summary Judgment, raising the statute of limitations defense, within three days of receipt of this decision." Id.
 
 
 26
 The next day, April 18, 1986, the defendants filed a motion for partial summary judgment and raised a statute of limitations defense. On April 25, 1986, the district court entered a decision granting the motion for partial summary judgment on the discriminatory parking enforcement claim because the district court concluded that the events underlying that claim occurred more than one year prior to the commencement of the action.
 
 
 27
 On September 12, 1986, the district court entered an order granting an unopposed motion to dismiss any punitive damage claim against the municipality, and overruled the defendants' motion for partial summary judgment on behalf of town officials, as the court concluded that the individual defendants were not entitled to absolute immunity. Trial was held on Haskell's claim for monetary relief on November 6-7, 18-19, and December 11-12, 1986. On December 18, 1986, Haskell moved to amend pursuant to Rules 15 and 17 of the Federal Rules of Civil Procedure to add his wholly owned management corporation as a party plaintiff. On February 3, 1987, the district court entered an order denying plaintiff's motion to amend on the ground that the defendants had based their cross-examination during Haskell's case-in-chief upon the fact that he was the only plaintiff. Trial continued into February, March and April of 1987, a few days at a time.
 
 
 28
 On April 7, 1987, Haskell concluded his proof. The district court then heard defendants' motions to dismiss pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The district court granted the motions to dismiss in part, holding that the individual defendants were entitled to qualified immunity and were therefore dismissed. The district court further held that even if the defendants had not been entitled to qualified immunity, there was insufficient evidence to support any claim for punitive damages.
 
 
 29
 With regard to the sole remaining defendant, Washington Township, the district court concluded that Haskell had failed to establish any proximate causation between the proposal and enactment of the unconstitutional zoning ordinance and his inability to perform abortions in Washington Township. For that reason, the district court held that Haskell lacked standing to bring a lawsuit for damages from the time he left Washington Township in October of 1981 until he purchased property in the Township in 1984. The district court then held that additional testimony was needed on whether Haskell's purchase of property in 1984 was sufficient to give him standing and whether he had established, by a preponderance of the evidence, his entitlement to any monetary relief from that date.
 
 
 30
 Although no further testimony occurred, the district court held on May 7, 1987, that after considering the remaining issues raised by the court in its prior oral decision, the court would sustain the defendants' motion to dismiss in its entirety. On September 3, 1987, the district court entered an unpublished final decision setting forth its reasoning for granting the defendants' motion. The district court held that Haskell had failed to establish that he had standing to sue after the purchase of property in Washington Township in 1984, that he failed to establish proximate causation between any wrongdoing of the defendants and the injuries allegedly sustained, and that he had failed to present any convincing evidence of damages. We note, however, that the district court never entered a judgment reflecting its prior determination that the ordinances enacted by Washington Township were unconstitutional. Although the district court had concluded that Haskell's request for injunctive and declaratory relief was well taken, relief was not granted in the final judgment entered by the court. Judgment was entered solely on Haskell's individual claims for monetary relief. Haskell filed a timely notice of appeal on October 2, 1987. The defendants did not file a cross-appeal.
 
 II.
 A. Statute of Limitations
 
 31
 The timeliness of Haskell's action was never questioned by the defendants until the district court raised the issue sua sponte in Haskell III. Applying this court's holding in Mulligan, wherein we held that a one-year statute of limitations would be retroactively applied to section 1983 actions in Ohio, the district court instructed the defendants to raise a limitations defense, if they desired, within three days of the court's decision. Haskell III, 635 F.Supp. at 562. When the defendants-appellees subsequently raised the issue in a motion to dismiss, the district court held that Haskell's claims of discriminatory application of the Township's zoning regulations regarding parking were untimely.
 
 
 32
 Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, a defense based upon a statute of limitations is waived if not raised in the first responsive pleading. See Senter v. General Motors Corp., 532 F.2d 511 (6th Cir.), cert. denied, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); United States v. Masonry Contractors Assoc. of Memphis, 497 F.2d 871 (6th Cir.1974); Crawford v. Zeitler, 326 F.2d 119, 121 (6th Cir.1964); see also Banks v. Chesapeake & Potomac Tel. Co., 802 F.2d 1416, 1427 (D.C.Cir.1986); Heiar v. Crawford County, Wisconsin, 746 F.2d 1190 (7th Cir.1984), cert. denied, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). It is of no importance that a party and/or his counsel were unaware of a possible statute of limitations defense. Since it is a waivable defense, it ordinarily is error for a district court to raise the issue sua sponte. Davis v. Bryan, 810 F.2d 42, 44 (2d Cir.1987); see also Banks, 802 F.2d at 1427; Wagner v. Fawcett Publications, 307 F.2d 409, 412 (7th Cir.1962) (trial court "had no right to apply statute of limitations sua sponte."), cert. denied, 372 U.S. 909, 83 S.Ct. 723, 9 L.Ed.2d 718 (1963). Otherwise, the waiver aspect of Rule 8(c) would have little meaning.[3] Because of the length of the time (over three years) and extensive litigation (three published opinions) between the filing of this action and the district court's sua sponte raising of this issue, the interests of justice require that we hold, under the circumstances in this case, that the defendants-appellees' failure to raise the limitations defense in a timely fashion constitutes a waiver. See McGraw v. Matthaei, 388 F.Supp. 84, 88-89 (E.D.Mich.1972) (untimely raising of limitations defense not allowed when extensive trial preparation and discovery had taken place). Therefore, we reverse the district court's dismissal on statute of limitations grounds.
 
 B. Standing
 
 33
 The record reflects that the district court has entered rulings on the issue of standing that appear to be in conflict. In Haskell I, the district court held that Haskell was without standing to challenge the unconstitutionality of the zoning ordinance enacted in 1982 because he had failed to allege any causal connection between his claimed inability to offer abortion services in Washington Township and the zoning ordinance enacted in 1982. The district court concluded that since Haskell did not allege that he presently owned, leased or was attempting to purchase or lease any property that was subject to the zoning ordinance, and he had abandoned his plans to operate the facility at the Paragon Office Building prior to the enactment of the resolution, then there was no causal connection between the alleged unconstitutional ordinance and his inability to offer abortion services. 588 F.Supp. at 532.
 
 
 34
 Subsequent to that holding, Haskell filed an amended complaint in which he sought to correct the pleading deficiencies found by the district court. In Haskell III, the district court examined the amended complaint and concluded that Haskell did have standing to challenge the constitutionality of both the 1982 and 1986 zoning ordinances. The court concluded that Haskell was alleging injury that was causally connected to the ordinances, and that he was a proper proponent of the legal rights at issue in that he had jus tertii standing to raise the rights of women seeking abortions in Washington Township. 635 F.Supp. at 555.
 
 
 35
 Although the district court unmistakably held that Haskell had standing to challenge the constitutionality of the ordinances in its holding in Haskell III, the district court then purported to hold, without giving any indication that it intended to amend or alter its earlier ruling, that Haskell did not have standing when it ruled on defendants' motion to dismiss pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.
 
 
 36
 However, a close examination of the record reveals that the district court's rulings on standing are not necessarily in conflict. Haskell raises two separate and independent claims in his complaint. He is seeking declaratory and injunctive relief on behalf of women who wish to obtain an abortion in Washington Township, and he also raises a separate personal claim for monetary relief for the alleged damage he has suffered as a result of the defendants-appellees' unconstitutional actions. Thus, the district court was faced with two distinct standing determinations. The district court had to determine first whether Haskell had standing to challenge the ordinances on behalf of third-party women seeking abortions in Washington Township, and it also had to determine whether Haskell had standing to raise a personal claim for monetary relief. Once the district court held in Haskell III that Haskell had standing to challenge the ordinances and that they were unconstitutional, the only claim left for trial was his personal claim. Since the district court did not indicate that it was altering or amending its earlier published opinion in Haskell III, its subsequent holding that Haskell did not have standing was limited solely to his claim for monetary relief. In light of the fact that the defendants have not filed a cross-appeal challenging the holding in Haskell III, the district court's holding that the 1982 and 1986 zoning ordinances are unconstitutional has not been preserved for appellate review. See United States v. American Ry. Express Co., 265 U.S. 425, 435-36, 44 S.Ct. 560, 563-64, 68 L.Ed. 1087 (1924) (an appellee cannot attack or modify a judgment or decree without filing a cross-appeal, but may assert any grounds in support of the decree even if ignored or overlooked by the district court.).
 
 
 37
 In granting the defendants' motion for dismissal pursuant to Rule 41(b), the district court concluded that Haskell lacked standing to bring an individual action for monetary relief. However, the distinction between standing analysis and Rule 41(b) dismissal analysis is significant and should be illustrated. "When the defendant makes a Rule 41(b) motion to dismiss for insufficiency of the plaintiff's evidence it becomes the duty of a court to weigh and evaluate the evidence." Hersch v. United States, 719 F.2d 873, 876 (6th Cir.1983) (quoting Weissinger v. United States, 423 F.2d 795, 798 (5th Cir.1970)). "Moreover, in evaluating the evidence, the judge makes no special inferences in favor of the plaintiff." Hersch, 719 F.2d at 876.
 
 
 38
 "In reviewing a Rule 41(b) dismissal in which a lower court has made findings of fact, ... the standard is the same as that for reviewing findings of fact by a court following a full trial." Id. at 877. As a Rule 41(b) dismissal "operates as an adjudication upon the merits, it is subject to the clearly erroneous standard of review." D.E. Rogers Associates, Inc. v. Gardner-Denver Co., 718 F.2d 1431, 1434 (6th Cir.1983), cert. denied, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984); see also Romain v. Kurek, 836 F.2d 241, 245 (6th Cir.1987); Hersch, 719 F.2d at 877. This court will not conclude that a district court's findings are clearly erroneous "unless, after viewing all the evidence, we are left with 'the definite and firm conviction that a mistake has been made.' " D.E. Rogers Associates, 718 F.2d at 1434 (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969)); see also Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). "It is not enough that we might give the facts another construction, resolve the ambiguities differently, and reach a conclusion different from that of the District Judge. Such a conclusion on our part does not make the finding 'clearly erroneus.' " Strickler v. Pfister Associated Growers, Inc., 319 F.2d 788, 790 (6th Cir.1963); see also Anderson, 470 U.S. at 573-74, 105 S.Ct. at 1511.
 
 
 39
 Thus, by its very nature, analysis under Rule 41(b) centers upon the sufficiency of the evidence presented at trial and is subject to limited appellate review. Standing, on the other hand, is a preliminary matter to be determined prior to the commencement of trial and is subject to de novo review on appeal. As this court has recently reiterated, "[t]he issue of standing, and whether a federal court has power to adjudicate a suit, is 'the threshold question in every federal case.' " Planned Parenthood Association of Cincinnati, Inc. v. Cincinnati, 822 F.2d 1390, 1394 (6th Cir.1987) (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 95 S.Ct. 2197 (1975)). "The basic inquiry is whether the 'conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.' " Babbitt v. United Farm Workers National Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (quoting Railway Mail Association v. Corsi, 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945)). The requirement of standing "assure[s] the concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978) (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)).
 
 
 40
 There are two levels of inquiry involved in standing analysis. The first is constitutional-jurisdictional, while the second is prudential. "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Article III. This is a threshold question in every federal case, determining the power of the court to entertain suit." Warth, 422 U.S. at 498, 95 S.Ct. at 2205. "[A]t an irreducible minimum, Art. III requires a party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putative illegal conduct of the defendant,' ... and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision[.]' " Valley Forge Christian v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted). In addition to the constitutional-jurisdictional mandate, a plaintiff must also establish, as a prudential matter, that he or she "is the proper proponent of the rights on which the action is based." Planned Parenthood, 822 F.2d at 1394.
 
 
 41
 It should be emphasized that "standing in no way depends upon the merits of the plaintiff's contention that the particular conduct is illegal." Warth, 422 U.S. at 500, 95 S.Ct. at 2206. "Standing is a threshold inquiry; it requires focus on the party seeking to have his complaint heard in a federal court, and it eschews evaluation of the merits. The court is not to consider the weight or significance of the alleged injury, only whether it exists." Coalition for the Environment v. Volpe, 504 F.2d 156, 168 (8th Cir.1974) (emphasis supplied).
 
 
 42
 As a general rule, standing should be determined as a preliminary matter through an examination of the allegations contained in the complaint, and "both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth, 422 U.S. at 501, 95 S.Ct. at 2206. If standing cannot be determined from examination of the complaint, then "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of the plaintiff's standing." Id.
 
 
 43
 Thus, the analysis a trial court conducts in determining whether a party has standing is entirely inapposite to that required by Rule 41(b). For that reason, we hold that standing is not properly the subject of a Rule 41(b) motion to dismiss and that it was error for the district court to apply Rule 41(b) analysis in holding that Haskell did not have standing to seek monetary relief under 42 U.S.C. Sec. 1983.
 
 
 44
 Moreover, a review of the record clearly establishes that Haskell had standing not only to challenge the constitutionality of the ordinances in question, but also to raise a personal claim for monetary relief. As the district court properly concluded in Haskell III, "[i]t remains uncontroverted that at present Plaintiff is still unable to provide abortion services in Washington Township. Therefore, the Court must conclude that Plaintiff has suffered, and continues to suffer, an actual or threatened injury." 635 F.Supp. at 552. We also agree with the district court's holding in Haskell III that "it is clear that 'there is a substantial likelihood that the relief requested will redress the injury claimed.' " 635 F.Supp. at 554 (citations omitted). Haskell has averred his intent to open an abortion clinic in Washington Township, has established that he purchased land there, and has pursued the possibility of purchasing the Paragon Office Building for the purpose of opening an out-patient surgery center. Moreover, it is undisputed that the two zoning ordinances in question bar establishment of an abortion clinic at either the Paragon Office Building or the property purchased by the Haskells, and that Haskell has alleged that he was injured because of the discriminatory application of the zoning ordinances with regard to parking. In sum, it is quite evident that Haskell has standing to seek monetary relief because of the alleged unconstitutional actions of the defendants. The district court's holding to the contrary is erroneous and is reversed.
 
 
 45
 The district court's holding that Haskell has standing to challenge the constitutionality of the ordinances has not been challenged on appeal. However, in the event that the district court's ruling on granting Rule 41(b) relief was intended as an implicit repeal of its earlier holding in Haskell III, we hold that the district court was correct in its holding in Haskell III that Haskell had standing to challenge the ordinances and that they are unconstitutional.[4] Any subsequent holding to the contrary is reversed.
 
 C. Immunity
 
 46
 The district court concluded that defendants Buchanan and Miller were entitled to qualified immunity from liability for any damages suffered by Haskell due to the enactment of either the 1982 or 1986 zoning ordinances because the law at the time the ordinances were enacted was unclear as to the constitutionality of such abortion-restrictive ordinances. Moreover, the district court concluded that assuming, arguendo, Haskell was entitled to compensatory damages from the individual defendants, punitive damages would not be awardable because of a lack of proof of malice or reckless disregard of his rights by these individual defendants.
 
 
 47
 There are two types of immunities available to persons performing certain governmental functions: absolute and qualified. See Owen v. City of Independence, 445 U.S. 622, 637-38, 100 S.Ct. 1398, 1408-09, 63 L.Ed.2d 673 (1980). When an official performs a traditionally judicial or quasi-judicial function, he is entitled to absolute immunity with regard to actions taken within that capacity. See Pierson v. Ray, 386 U.S. 547, 553-54, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). But cf. Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (state judge's demotion and discharge of court employee is administrative decision that is not entitled to absolute immunity.). Federal and state legislators are also entitled to absolute immunity from liability for actions taken in their legislative capacity. See Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). But cf. Gravel v. United States, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972) (A congressman's cooperation with a private publisher for the dissemination of the Pentagon Papers was not protected.). Officials performing traditionally executive or administrative discretionary functions, however, are entitled to only qualified immunity and are entitled to immunity only if they can establish that the actions were within the scope of their duties and were taken with a reasonable belief that they were lawful. See Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); see also Garvie v. Jackson, 845 F.2d 647 (6th Cir.1988).
 
 
 48
 In Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the Court held that members of a state-created regional land planning agency[5] were entitled to absolute immunity "to the extent the evidence discloses that these individuals were acting in a capacity comparable to that of members of a state legislature." Id. at 406, 99 S.Ct. at 1179. Since then, seven circuit courts of appeals have extended the holding in Lake Country Estates to local/municipal legislators and held that they are likewise entitled to absolute immunity from liability in section 1983 actions for conduct undertaken in their legislative capacity. See Aitchison v. Raffiani, 708 F.2d 96, 98-99 (3d Cir.1983); Reed v. Village of Shorewood, 704 F.2d 943, 952-53 (7th Cir.1983); Espanola Way Corp. v. Meyerson, 690 F.2d 827, 829 (11th Cir.1982), cert. denied, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983); Kuzinich v. County of Santa Clara, 689 F.2d 1345, 1349-50 (9th Cir.1982); Hernandez v. City of Lafayette, 643 F.2d 1188, 1193 (5th Cir.1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); Bruce v. Riddle, 631 F.2d 272, 274-80 (4th Cir.1980); Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 613-14 (8th Cir.1980).
 
 
 49
 However, in a holding several years prior to the Supreme Court's holding in Lake Country Estates, this court held that local legislators are not entitled to absolute immunity but are limited to qualified immunity for acts performed in good faith in performance of their official duty as they understood it. Nelson v. Knox, 256 F.2d 312, 314-15 (6th Cir.1958). The district court applied Nelson, but opined that if this court were to reconsider the question in light of the Supreme Court's holding in Lake Country Estates, it would follow the other circuits and conclude that local legislators are entitled to absolute immunity. We agree. Therefore, for the reasons enunciated by the Eighth Circuit in Gorman Towers, we hold that our previous holding in Nelson is no longer valid and that legislators of any political subdivision of a state are absolutely immune from liability under 42 U.S.C. Sec. 1983 insofar as they are acting in a legislative capacity.
 
 
 50
 Thus, the key inquiry is obviously in what capacity the individual Trustees were acting at the time of their alleged unconstitutional conduct. Unfortunately, the various activities of most local or municipal officials cannot be characterized as only administrative, legislative, or judicial. Instead, the scope of immunity depends on the nature of the activity involved. As the Fifth Circuit has recognized, "it is the official function that determines the degree of immunity required, not the status of the acting officer." Marrero v. City of Hialeah, 625 F.2d 499, 508 (5th Cir.1980) (emphasis in original), cert. denied, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981); see also Aitchison, 708 F.2d at 99. Thus, when local officials act in a judicial or legislative capacity, they are entitled to absolute immunity. If their conduct is administrative in nature, then only qualified immunity is available. Otherwise, if the conduct in question is neither administrative, judicial, nor legislative, they are not entitled to any immunity from damage liability.
 
 
 51
 In this case, the Trustees contend that they were acting in their legislative capacity when enacting the zoning ordinances in question. Although zoning is ordinarily a legislative activity, it is not always legislative for purposes of immunity. See Cutting v. Muzzey, 724 F.2d 259 (1st Cir.1984) (Members of a municipal planning board were not entitled to absolute immunity when imposing conditions on a developer because of racial animus.). If the underlying purpose of zoning activity is to establish general policy, then it is legislative. See Kuzinich, 689 F.2d at 1349 ("the enactment of a general zoning ordinance is a legislative act."). If, however, "the action 'single[s] out specifiable individuals and affect[s] them differently from others,' it is administrative." Cutting, 724 F.2d at 261. See Scott v. Greenville County, 716 F.2d 1409, 1423 (4th Cir.1983) ("When local zoning officials do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement, they can claim only the executive qualified immunity appropriate to that activity."). Moreover, absolute immunity does not extend to even traditionally legislative actions of officials taken either in bad faith, because of corruption, or primarily in furtherance of personal instead of public interests. Bruce, 631 F.2d at 276-77 n. 2. Finally, while the interaction between local officials and their constituents or other interested parties may often be legislative, it is protected only if it is in furtherance of a reasonably ascertainable legislative activity. Id. at 279.
 
 
 52
 On remand the district court should examine all of the alleged injurious conduct of the Trustees and characterize each action as either administrative, legislative, or outside the scope of either. The degree of immunity from the damages, if any, flowing from each activity will depend on the results of that determination by the district court.
 
 
 53
 We also reverse the district court's holding dismissing the claim for punitive damages. A review of the record indicates that there is sufficient evidence from which one could infer that the actions of the individual Trustees were in less than good faith and were instead intended to further personal pecuniary interests, to carry out their individual views regarding abortion, and/or to keep certain classes of individuals from entering the Township.
 
 
 54
 D. Failure to Grant Declaratory and Injunctive Relief
 
 
 55
 Haskell contends that the district court erred in failing to grant the declaratory and injunctive relief requested upon the court's finding that the ordinances enacted in both 1982 and 1986 were unconstitutional. We agree. In Haskell III, the district court concluded that Haskell had third-party standing to challenge the constitutionality of the ordinances, and held that the ordinances were unconstitutional. However, the judgment entered by the district court, without explanation, fails to grant the equitable relief to which the district court had previously held that Haskell was due. Since the defendants have not filed a cross-appeal and have therefore waived appellate review of that holding, we are without authority to review the district court's conclusion that the ordinances were unconstitutional. Indeed, the district court's view that the ordinances are constitutionally infirm is evident in the findings of fact in the court's Final Decision entered on September 3, 1987. J.A. at 287. Therefore, in light of our holding that Haskell had standing to raise all of his claims, the district court is instructed on remand to enter an order reflecting its earlier finding in Haskell III that the ordinances were unconstitutional and grant the equitable relief Haskell seeks.
 
 E. Attorneys' Fees
 
 56
 On appeal, Haskell argues that as he was successful in substantially prevailing on the merits of his constitutional claim, he is entitled to attorneys' fees pursuant to 42 U.S.C. Sec. 1988. Because Haskell was a prevailing party in that the ordinances in question were held unconstitutional, we agree. The "decisions under section 1988 have made it clear that it is not necessary for a party to secure a judgment in his favor in order to be a prevailing party. If the party achieves a substantial portion of the relief sought or succeeds on a significant issue as the result of an agreed settlement or a consent decree this is sufficient to support an award of attorney's fees." Othen v. Ann Arbor School Board, 699 F.2d 309, 313 (6th Cir.1983) (citing Maher v. Gagne, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)). See also Loudermill v. Cleveland Board of Education, 844 F.2d 304 (6th Cir.1988). Moreover, "[a] plaintiff may also qualify as a prevailing party if his lawsuit is found to be the 'catalyst' which causes the defendant to make significant changes in its past practices, though no direct relief is obtained." Othen, 699 F.2d at 313. See Americans United for Separation of Church and State v. School District of the City of Grand Rapids, 835 F.2d 627 (6th Cir.1987) (parties who prevailed in action under Federal Declaratory Judgment Act, seeking only declaratory and injunctive relief, were entitled to attorneys' fees even though they had not pleaded and relied on a civil rights provision.).
 
 
 57
 In addition, Haskell also requests this court to order that the district court grant him interim attorneys' fees for the amounts reasonably incurred in having the ordinances declared unconstitutional. We agree that interim attorneys' fees are proper in certain situations. See Deerfield Medical Center v. City of Deerfield Beach, 661 F.2d 328 (5th Cir.1981) (interim fees in abortion zoning case); Aware Woman Clinic v. City of Cocoa Beach, 629 F.2d 1146 (5th Cir.1980) (fees after partial summary judgment in abortion regulation case). Therefore, on remand, the district court, if a request is forthcoming, is to determine whether the circumstances of this case justify an interim award of attorneys' fees.
 
 F. Denial of Request to Add Party Plaintiff
 
 58
 The record indicates that defendants attempted to prove at trial that any damages suffered by Haskell were suffered solely by his wholly owned corporation, and not him personally. Haskell then moved the court prior to his testimony to add the corporation as a party for the purpose of allocating any damages that the court might view as belonging to that entity. See Fed.R.Civ.P. 15. The district court denied the motion because of potential prejudice to the defendants in that certain witnesses had been cross-examined under the belief that Haskell was the only party-plaintiff. Since our holding today remands this action for a new trial, we fail to see any prejudice to the defendants resulting from the granting of Haskell's motion on remand. See Ellison v. Ford Motor Co., 847 F.2d 297, 300 (6th Cir.1988) (per curiam) (Leave to amend a pleading "shall be freely given when justice so requires."). Therefore, the district court is instructed to grant this motion on remand.
 
 G. Damages
 
 59
 Haskell's final contention is that the district court erred in holding that his proof of damages was speculative. The district court held that the only damages that Haskell established stemmed solely from the untimely aspects of his complaint dealing with discriminatory application of parking regulations. Since we hold that the district court erred in dismissing that cause of action as untimely, then it necessarily follows that the district court's ruling regarding damages must be vacated. See Memphis Community School District v. Stachura, 477 U.S. 299, 310-11, 106 S.Ct. 2537, 2545, 91 L.Ed.2d 249 (1986) (it may be appropriate to presume general damages from some constitutional violations); Parrish v. Johnson, 800 F.2d 600, 606-09 (6th Cir.1986).
 
 III.
 
 60
 Accordingly, the judgment of the district court is REVERSED, and this action is REMANDED for further proceedings consistent with this opinion. On remand, the district court is instructed to grant Haskell the injunctive and declaratory relief he seeks regarding the 1982 and 1986 zoning ordinances. Otherwise, we express no opinion as to the eventual outcome of this case.
 
 
 
 [1]
 The Board of Trustees was composed of Duane Snyder, Walter Buchanan, and Russell Miller
 
 
 [2]
 The only legal opinion supporting the constitutionality came from a lawyer in a neighboring township. This legal opinion was based on the holding in West Side Women's Services, Inc. v. Cleveland, 450 F.Supp. 796 (N.D. Ohio 1978), wherein the court denied a motion for a preliminary injunction in an action challenging an ordinance almost identical to the one enacted here. The court later held the ordinance unconstitutional in West Side Women's Services, Inc. v. Cleveland, 573 F.Supp. 504 (N.D. Ohio 1983)
 
 
 [3]
 If a statute of limitations defense clearly appears on the face of a prior pleading, then waiver is sometimes excused. See, e.g., Pierce v. County of Oakland, 652 F.2d 671 (6th Cir.1981) (per curiam). In this case, however, the defendants-appellees offered no hint of the defense until the district court raised the issue sua sponte more than three years after the action was filed
 
 
 [4]
 As the Supreme Court recently held in Virginia v. American Booksellers Ass'n, Inc., 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988), a party has standing to challenge a law if it "is aimed directly" at him and he "will have to take significant and costly compliance measures or risk criminal prosecution." Id. 108 S.Ct. at 642
 
 
 [5]
 The Court expressly declined to decide "[w]hether individuals performing legislative functions at the purely local level, as opposed to the regional level, should be afforded absolute immunity." Lake Country Estates, 440 U.S. at 404 n. 26, 99 S.Ct. at 1178 n. 26