16 F.3d 1219
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 William DAVIS, Petitioner-Appellant,
v.
William OVERTON, Respondent-Appellee.
 Nos. 93-1376, 93-1387.
 United States Court of Appeals, Sixth Circuit.
 Jan. 12, 1994.
 
 Before: NELSON and BATCHELDER, Circuit Judges, and MATIA, District Judge.*
 PER CURIAM.
 
 
 1
 This is a habeas corpus appeal in which the main issue is whether it was error for the district court to accord a presumption of correctness to a state court decision that resolved dispositive factual issues adversely to the petitioner. Concluding that 28 U.S.C. Sec. 2254(d) made such a presumption mandatory, we shall affirm the district court's denial of the writ.
 
 
 2
 * In 1979 the State of Michigan charged the petitioner, William Davis, with first-degree felony murder and possession of a firearm during the commission of a felony. Acting with the advice and counsel of an attorney, William Ashworth, Mr. Davis entered into a plea pursuant to which he pleaded guilty to one count of second-degree murder. Upon conviction of that crime he was sentenced to a term of life imprisonment, with eligibility for parole after ten years. If he had been convicted of first-degree murder, he would have received a mandatory sentence of life imprisonment without possibility of parole.
 
 
 3
 In 1989, when he had served ten years in prison without having been granted parole, Mr. Davis moved for withdrawal of his plea. The motion was based on a claim that his attorney had promised him he would be released when he had served ten years, and that this erroneous representation made the plea constitutionally defective. Mr. Davis also claimed that because he could not get a transcript of the original plea proceedings, he had been deprived of his state constitutional right to appeal the conviction. No such transcript had been prepared in 1979, there having been no appeal at that time, and when Mr. Davis requested a transcript ten years later, the court reporter's notes could not be located.
 
 
 4
 An evidentiary hearing on Mr. Davis' motion was conducted by the state trial court in July of 1989. The trial judge who had handled the case in 1979 was no longer living, but both Mr. Davis and his original attorney, Mr. Ashworth, took the stand.
 
 
 5
 Mr. Ashworth testified that he had begun practicing law in 1977 and had regularly handled criminal matters, including cases involving life sentences, until he took a position with the Law Department of the City of Detroit in 1983. Mr. Ashworth stated that he remembered Mr. Davis' preliminary examination, but could not specifically recall his discussions with Mr. Davis regarding the plea bargain. Mr. Ashworth went on to say that he was "sure" he had not promised Mr. Davis parole after ten years, however, "because I have never told any client when they would be paroled because I would have no way of knowing." It was Ashworth's usual practice, he testified, to discuss with a client the terms of a possible plea bargain, the possible penalties for the crime or crimes charged, and the time frame in which the client would become eligible for parole. He stated without qualification that he had "never told any client that he would be paroled at a certain time."
 
 
 6
 Mr. Davis, on the other hand, testified that Ashworth told him that he should plead guilty to second-degree murder because the prosecution's case against him was "very strong" and he would be facing a mandatory sentence of life without possibility of parole if he were convicted of first-degree murder; that Ashworth told him he would be paroled in ten years if he accepted the plea bargain; and that Ashworth was talking about actual parole, not mere eligibility for parole. Mr. Davis further testified that at the plea hearing he made two attempts to tell the court that his attorney had promised him parole after ten years; both times, he said, he was interrupted. When asked at the plea-taking whether any promises had been made to induce him to enter into the plea agreement, Davis testified, he answered in the negative because Mr. Ashworth told him to.
 
 
 7
 The state trial court denied the motion to withdraw the plea, finding that Mr. Davis' testimony was not credible and that Mr. Ashworth's was. The court observed, among other things, that Mr. Davis' testimony was entirely self-serving, whereas Mr. Ashworth had "no reason to falsify at all."
 
 
 8
 Mr. Davis applied for leave to appeal the trial court's ruling to the Michigan Court of Appeals. The application was denied. He then sought leave to appeal to the Michigan Supreme Court.
 
 
 9
 Reserving decision for a time, the Supreme Court directed the trial court to conduct a further search for the court reporter's notes and to determine whether the prosecutor who was present at the plea-taking had any relevant information. A new hearing was held by the trial court, at which time the state submitted an affidavit from the prosecutor attesting that he had no recollection of the plea proceedings. A representative of the Wayne County Circuit Court testified that another search for the court reporter's notes had been conducted without success. In light of this information the trial court adhered to its earlier decision, and the Michigan Supreme Court denied leave to appeal.
 
 
 10
 The instant habeas petition was then filed in the United States District Court for the Eastern District of Michigan. The petition stated two grounds for relief: (1) that Mr. Davis' guilty plea was involuntary and uncounseled, having been induced by the lawyer's constitutionally defective promise of parole after ten years; and (2) that Mr. Davis had been deprived of his liberty without due process of law, the absence of a transcript having made a delayed appeal of the conviction impossible.
 
 
 11
 Acting on the recommendation of a magistrate judge, the district court entered a final judgment denying the petition. This appeal followed.
 
 II
 
 12
 In a federal habeas corpus proceeding instituted by a state prisoner, 28 U.S.C. Sec. 2254(d) provides, "a [written] determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State ... were parties ... shall be presumed to be correct " unless one or more of seven specific exceptions be found applicable or unless the federal habeas court should conclude that the factual determination "is not fairly supported by the record." (Emphasis supplied.) This provision was designed to "alleviate some of th[e] friction" that can be produced by federal habeas review of state court proceedings. Sumner v. Mata, 449 U.S. 539, 547, 550 (1981).
 
 
 13
 The statute requires a federal habeas court to accord a "high measure of deference" to the state court's factual findings. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Such findings may not be displaced as not fairly supported by the record unless the habeas petitioner has established "by convincing evidence that the factual determination ... was erroneous." Sumner, 449 U.S. at 550. Federal habeas courts are not free "to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall, 459 U.S. at 434.
 
 
 14
 In the case at bar the state trial court determined in writing, after an appropriate evidentiary hearing, that Mr. Ashworth did not promise that Mr. Davis would be released on parole after serving ten years. Mr. Davis does not argue that any of the seven statutory exceptions applies here, and it is clear to us that the trial court's determination is fairly supported by the record. The trial court determined that Mr. Ashworth's testimony was more believable than the petitioner's; under Marshall v. Lonberger, we must accept that determination.
 
 III
 
 15
 Mr. Davis asks us to remand the case with instructions that the district court conduct its own evidentiary hearing, but he does not suggest any reason for supposing that the facts brought out at such a hearing would differ from those brought out at the hearing already conducted by the state trial court. If the facts were not adequately developed in the state court proceeding, moreover, Mr. Davis must overcome a "cause and prejudice" bar. See Keeney v. Tamayo-Reyes, 112 S.Ct. 1715 (1992), where the Supreme Court held that a federal habeas petitioner who fails to develop material facts adequately during state post-conviction proceedings must show cause for the failure, as well as resulting prejudice, before he will be afforded a federal evidentiary hearing. Id. at 1719-21. Alternatively, Keeney teaches, a federal evidentiary hearing can be had if the denial of such a hearing would result in a "fundamental miscarriage of justice." Id. at 1721. Mr. Davis has shown neither cause and prejudice nor a fundamental miscarriage of justice, and he is thus not entitled to a new hearing.
 
 IV
 
 16
 The claim that the absence of a transcript of the plea hearing has resulted in a denial of due process is also without merit. Under Michigan law, a person convicted of a criminal offense has no right to a direct appeal ten years after the fact. See MICH.CT.R. 7.205(F)(3) ("if an application for leave to appeal is filed more than 18 months after entry of the order or judgment on the merits, leave to appeal may not be granted"). The United States Constitution does not require that a state provide for such appeals, Ross v. Moffitt, 417 U.S. 600, 611 (1974), and the loss of the transcript of the plea hearing is without constitutional significance.
 
 V
 
 17
 The respondent, who is the warden of the correctional facility at which Mr. Davis is confined, argues that we should reverse an order in which the district court denied a motion for summary dismissal of the petition under Rule 9(a), Rules Governing Section 2254 Cases in the United States District Courts. The respondent did not take a cross-appeal on this issue, however, see Haskell v. Washington Township, 864 F.2d 1266, 1278 (6th Cir.1988), and there would have been no reason for us to consider the question in any event, given our disposition of the case.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation